In the Matter of the Construction of the Last Will and Testament of JOHN READY, Deceased.

Surrogate's Court, Monroe County, July 27, 1928.

Wills — construction — will devised property in trust for benefit of one sister with provision that upon her death $50 per month should be paid to another sister now living — first sister died — income of estate is approximately $1,100 — testator had other next of kin — will provided that upon death of second sister principal should go to such of four non-relatives as might then be living — said four non-relatives are not presumptively entitled to next eventual estate, under Real Property Law, § 63, and Personal Property Law, § 11 — excess of income, if any, payable to heirs at law and next of kin.

The testator devised his property for the benefit of a sister for life. The will also provided that upon said sister's death there should be paid to another sister fifty dollars per month for her life and that upon the death of both sisters the residue and remainder of the estate should go to four adult non-relatives " or to such of them as may then be living, share and share alike." The testator left him surviving certain next of kin other than his two sisters. The four adult non-relatives who are mentioned in the residuary clause as the takers of the remainder, are not entitled to the next eventual estate, under section 63 of the Real Property Law and section 11 of the Personal Property Law, so that the excess income shall be paid to them, for none of them may ever become entitled to any estate. However, the next of kin are entitled to the excess income and it is directed that such excess of income be paid to them.

PROCEEDINGS to reprobate will and for construction thereof.

C. S. McLouth [Sutherland & Dwyer of counsel], for the executor.

Cyrus W. Phillips, special guardian.

FEELY, S. This testator, a local physician, having duly expressed in his last will on April 22, 1925, as to the disposition to be made at his death of his $25,000 estate, died on the 16th of November, 1926, without any notable change having occurred in his property, which consisted of about $14,000 in bank deposits, and the rest in Liberty bonds. He had never married. Two sisters, Delia and Mary, were supposed to be his only next of kin. Both are named as legatees.

He bequeathed, for and during her own lifetime, the use of all his estate to his elder sister, Delia, who died February 4, 1928. After his estate had been judicially settled, and the person named as executor had received letters of trusteeship, and had been paying over to Delia the income at the rate of $1,100 a year, it was then discovered that there were other next of kin, who, through no fault of the executor, had not been made parties to the probate proceedings, to wit, Zella R. Bragg, a daughter of his deceased

Misc. 616]        Surrogate's Court, Monroe County, July, 1928.

brother, Patrick B. Ready, living in New Mexico, and the surviving descendants of his deceased brother Michael Ready, a niece named Della R. Welch of Detroit, Mich., and a grandniece named Lucille Margaret Jones, living in Minnesota.

In a proceeding then brought to reprobate the will, the trustee asked the court also to construe the will with reference to the conditions that developed upon the death of the legatee, Delia, and the discovery of the other next of kin. He had been paying Delia income at the rate of $1,100 a year. Her sister Mary survived her, and is still living. As to Mary, the testator in the 4th clause of his will provided that " If my sister Mary O'Brien be living at the death of my sister Delia Ready, then I direct my executor hereinafter named to pay to my said sister Mary O'Brien the sum of fifty dollars per month during her lifetime." This annuity totals $600 a year; and can, if need be, come out of principal. The annual income, at present, amounts to $1,100 a year. The question arises, what becomes of the rest of the income over Mary's annuity of $600 during her lifetime? Is there a partial intestacy as to this excess income, or does it pass now to the remaindermen, either as such under the residuary clause of the will, or as presumptive beneficiaries under the provisions of section 63 of the Real Property Law, made applicable by section 11 of the Personal Property Law, whereby, during a lawful suspension, rents or interest, for the accumulation of which no valid direction has been given, " shall belong to the persons presumptively entitled to the next eventual estate? "

The residuary clause of this will reads that " Upon the death of both my sisters, Mary O'Brien and Delia Ready, I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, to [four adult non-relatives, named], *or to such of them as may then be living*, share and share alike." (Italic is not in the original.)

This residuary clause is phrased broadly enough to carry everything not only that is not attempted to be disposed of, but also that is not effectually disposed of. Under the general rule, favoring vesting of remainders at the death of testator, the word " after " the death of the life tenant, or the phrase used here, " upon the death " of the life tenant, would merely postpone the use or possessory enjoyment, even where the remainder, after a life use, is " then given " to several named individuals, " or the survivor of them " (*Moore* v. *Lyons*, 25 Wend. 119; cited in *Kelso* v. *Lorillard*, 85 N. Y. 177, 181; *Matter of Mahan*, 32 Hun, 73; affd., 98 N. Y. 372); but this last ruling " is confined to those cases in which there is no other period to which the survivorship can be referred." (Id.)

The will in question here associated " then " with " living," rather than with " giving; " and thereby definitely fixed the death of the second sister named as the period of time at which to determine who will be the next recipients. In the meantime, these four named residuary legatees could not unite and absolutely extinguish all residuary rights under this will, because, before the arrival of the time fixed, they might all have died, and the residue would then pass as in intestacy. This residue, therefore, will not vest in, nor be possessed by, any one until the death of the second legatee, and then, possibly, not in any of these four named remaindermen, as such. Until the annuitant die, while these four may be said to own now a *chance to become* hereafter entitled to the next eventual estate, yet a condition precedent having been interposed, they are not now the owners of the residual estate, subject to defeasance hereafter, by a condition subsequent. Each of them must outlive the annuitant before they "become *entitled*" to the estate in the remainder. Until that contingency happen it is impossible to say who will own the eventual estate, as distinct from the chance of becoming such hereafter.

Had this remainder been one that vested in the four named — without any contingency or survivorship attaching — obviously, the presumed generality of the clause in this will purporting to " devise and bequeath all the rest " of the estate would alone carry the undisposed and unaccumulatable income in question over to them (See *Matter of Kohler*, 96 Misc. 433), and in such case it would be difficult to imagine what object section 63 of the Real Property Law was intended to attain in unnecessarily designating the persons to be deemed entitled to such excess. Where, however, a remainder is a contingent one, and its probable recipients ascertainable presently, even though they, in the end, may prove not to be the ones who ultimately take it, by reason of some condition subsequent working out a defeasance, yet the section mentioned can be said to serve the purpose of anticipating, as it were, the remainder, and of giving presently to those named the income undisposed of by the will, and meantime not legally to be accumulated; and thereby avoid deciding that, notwithstanding a narrow residual clause and the presumption against intestacy, the testator died intestate as to the excess income. It has been said that the statute is founded on the presumption that the donor of the property may naturally be supposed to intend that the income should go to the same person to whom he had given that out of which the income arises. (*Dodge* v. *Pond*, 23 N. Y. 69.) To this extent, we are all in accord.

This presumption, however, would lose its force if the testator

left. it uncertain and presently unascertainable who those next takers or remaindermen would be. In determining just who are now the persons who would be the " persons presumptively entitled to the next eventual estate " a difficulty has arisen out of the survivorship provision in this remainder clause.

There can be no doubt that the " eventual estate " here will be the remainder, if any, on hand when the annuitant dies. It is also clear that the persons entitled thereto may be in either one of two classes: either the four remaindermen named, or the survivors or survivor of them, or else, if those four all should die before the annuitant — no matter whether they leave next of kin or not — then those who at that time are the next of kin of the testator — and just who they then will be is not now known and cannot be ascertained until then. In so far as the possible takers are unascertainable, they cannot be the ones for whom this statute anticipates remainder privileges or benefits by deeming them persons entitled to take presently, as it accrues, such undisposed income as the statute specifies. The unascertainable ones now have the same right as have the four persons named; because the implication of the survivorship idea is that none of the four may survive; and surviving is a condition precedent here. The four named, therefore, have no preference over the next of kin. Either class is now presumptively entitled to the next eventual estate. In such case, the courts have held they will not prefer nor guess at what the outcome will be; and hence, there being no presently ascertainable person presumably entitled to take, the excess income falls to the next of kin, not under this statute, but under that of distribution. There are two cases in point.

In *United States Trust Co.* v. *Soher* (178 N. Y. 442, 449) two brothers were named residuary legatees, with cross-remainders, and the court said: " Under the will the brothers take from each other. The survivor alone is given his deceased brother's share, so that the surviving brother would be the person presumptively entitled to the next eventual estate. But we are given no authority to determine or to indulge a presumption as to which of these brothers will survive the other and cannot, therefore, before the happening of that event ascertain which will be entitled to the estate."

The court then adopts the language of a prior holding to the effect that " The case cannot, therefore, in any view be brought within the provisions of the statute, and hence, if, after deducting the payments for any year from the income of that year a surplus of income should remain that surplus would belong, not to the residuary legatees, but to the next of kin." Of this case, the court

in *Matter of Glass* (126 Misc. 728) said that " the sons each had a cross-remainder limited on the life of the other, which was plainly contingent, and in the absence of issue who were to take the remainder in the first instance, the court was justified in finding that there was no one at that time presumptively entitled to the next eventual estate."

So, in *Matter of Kohler* (231 N. Y. 353) the court say that in the *Soher* case " the court was unable to ascertain who were the persons presumptively entitled to the next eventual estate; " and for that reason the undisposed surplus was distributed between the next of kin. Counsel for the executor points out that in the *Soher* case the will planned an equality between the two sons who were also the next of kin; and that one son was ten years old and the other not yet of marriageable age, so that there were then no children of these boys in existence; and the ultimate class of takers was to be such grandchildren.

The *Soher* case was followed by the Supreme Court in *Pruyn* v. *Sears* (96 Misc. 200), where the residuary estate, after income had been paid over partly to certain children and partly to the testator's widow during her life or widowhood, was to be divided, upon her death or remarriage, into as many parts as there were surviving sons then living; and it was there held that any son whose rights were liable to be cut off by his death during the life or widowhood of his mother, could not be said to be the owner of the next eventual estate; and the surplus income was, therefore, given to the next of kin.

Counsel for the executors urges that the case of *Cook* v. *Lowry* (95 N. Y. 103) is decisive in favor of the four persons here named, regardless of the other class of possible takers. There a father in his will created a trust in favor of his infant daughter to pay her a fixed income during her life and accumulate the rest, and upon her death leaving issue her surviving, the principal and accumulations were given to such issue; but if she died leaving no issue, the fund was given to testator's three sons. The daughter had one daughter born to her, both of whom were living when the will was construed to mean that, the accumulation of excess income being illegal, the granddaughter, as the person entitled to the next eventual estate was entitled to the excess income that was to have been illegally accumulated, and that this was so even though she had only a future contingent estate during the life of her mother, and even though her right to take the estate ultimately depended upon her outliving her mother.

The special guardian points out that here the granddaughter was the only person clearly " entitled to the next eventual estate,"

and that there was an absolute gift to a designated person then in existence. " It was not a gift limited to take effect upon an uncertain event; it was a gift, which the uncertain event might chance to defeat." (*Young* v. *Barker*, 141 App. Div. 801, 806.) This condition subsequent feature also appears in the last sentence of section 63: " But any and all persons who legally shall have begun heretofore, or shall begin hereafter, to receive any such undisposed of rents or profits, or any part thereof, by virtue of this section or otherwise, shall continue to receive and enjoy the same notwithstanding the birth *thereafter* of a child or children to any person or persons receiving all or any part of such rents and profits."

Counsel adds the case of *Cochrane* v. *Schell* (140 N. Y. 516, 537), where the will set up a trust to pay $20,000 a year out of income, which proved to be $80,000 annually, to testator's daughter S., and on her death to convey the estate to such of his grandchildren as should then be living and if any of said grandchildren should die before the death of his daughter S., leaving issue, the latter were to take their parent's share.

At his death S. was living and also eight grandchildren. It was held below that the residuary estate had vested in his grandchildren; and the Court of Appeals, on the assumption that such vestings occurred — as to which they declined to express themselves — said the grandchildren were the persons entitled to the next eventual estate within this statute. The special guardian distinguishes this case from that at bar in that here upon the death of a grandchild the will substituted its issue, and thereby made ascertainable, at any time, the personnel of the next eventual estate. In the case at bar, the next takers cannot be ascertained till the death of the annuitant.

In the cases cited by the petitioner there was no uncertainty as to the identity of the next takers; and their rights as such were regarded as vested, although subject to be defeated by conditions subsequent, notwithstanding which the statute makes the vested defeasible right presumptively entitled presently also to the undisposed excess income. The word " presumptively " operates to remove any uncertainty arising from a condition subsequent or defeasance. To stress this word to the extent of obliterating a condition precedent is a form of guessing on which the court in the *Soher* case declined to take a chance. There seems to be no other line of distinction between those divergent classes of rulings than this — that if there be any uncertainty, at the time the excess occurs, as to the persons who will, in the event specified by testator, be the next takers, this section is inapplicable, and the excess goes to the next of kin. When the excess occurs there must be some

persons in existence definitely answering, at that time, the designation of takers of the next eventual estate, even though a defeasible one, before such persons can be brought forward into the life estate, and, before their time, be enabled to take the undisposed income, by virtue of the anticipatory effect of this section. Only definite next takers can thus be advanced in the line. This section was not meant to resolve a presently inherent uncertainty as to the identity of the takers of the next eventual estate, at the time the excess arises.

This court being, therefore, of opinion that this testator's next of kin are entitled to the undisposed income, the trustee is entitled to a direction as to the disposition thereof.

The new parties having made default, no question having arisen as to reprobating this instrument now in discussion, nor as to surcharging the executor upon the account of his liquidation, nor the trustee's account of the fund properly chargeable to him as of the date of the death of Delia Ready, the trustee will, by the decree to be entered, be directed to continue the execution of his trust by paying annually, from the date of the death of Delia Ready, to Mary O'Brien, the sum of $50 a month, to be derived only out of the net income of the trust estate until such time as the income shall, without fault on the part of the trustee, have become insufficient therefor, and in that event to apply so much of the principal as may be needed to make up the amount of $600 in any one year; and that only if there be, in any one year, any excess of net income over said annuity, said excess shall be paid over annually to the next of kin of testator then living, namely, now to Mary O'Brien one-third thereof, in addition to said annuity, one-third to Zella R. Bragg, and one-sixth to Della R. Welch and one-sixth to Margaret L. Jones; and likewise to continue payment of such fractions to such persons named, or to their next of kin or assigns, so long as said Mary O'Brien shall live; and upon the death of Mary O'Brien, and after having made any apportionment of income that may then be determined to be proper, to pay over the rest of the trust estate to such of the four persons named as residuary legatees in the 5th clause of the will as shall then be living, in shares equal to their number, or all to the sole survivor; or if none of said four persons be living at the death of Mary O'Brien, to pay over said residue to the next of kin of the testator living at the date of the death of said annuitant.

The decree will further provide for allowances to be fixed upon its submission, one to counsel for petitioners to be paid out of the principal of the estate funds and the other to the special guardian to be paid out of the undisposed income before distribution thereof.