Edward S. Silver, J.
In this proceeding the executors seek a determination as to the validity and effect of the notice of election filed by the testator’s widow, and for a construction of article Sixth of the will and directing the disposition of the excess income that may be derived from the trust created thereunder. The gross estate left by the testator is approximately $740,000.
The testator died on June 7, 1964 survived by his widow and a daughter. In his will he provides for the payment of debts and funeral expenses; bequeaths his household furniture, furnishings and effects and the sum of $2,500 to his wife; nominates his daughter and son-in-law as executors and trustees; and by article Fourth bequeaths one third of his residuary estate to his trustees ‘£ to be held by them during the lifetime of my wife * # * and during that period to pay the income thereof to my wife * * * monthly.” After providing, in article Fifth, for the payment of a legacy in the sum of $3,000 to his brother, the testator, in article Sixth, bequeaths “ all the rest, residue and remainder of the two-thirds (%) of my residuary estate to my trustees, in trust, as a separate fund to invest and re-invest the same and collect the income therefrom, and out of the net income, or if the income is insufficient, then out of principal to pay to my daughter * * * the sum of Three Thousand One Hundred Twenty ($3,120.00) Dollars annually for a period of ten (10) years from the date of my death in equal monthly installments, and upon the date of expiration of the said ten (10) years to pay and distribute the remaining principal as follows, to wit: three-fourths (%) thereof to my said daughter * - * * and one-fourth (%) thereof equally among my grandchildren living at the time of the date of expiration of said ten (10) years.” The testator further provides in said article Sixth that in the event his daughter survives him but dies prior to the expiration of said 10-year period the balance of the principal of *445 said trust and accrued interest shall be paid to his daughter’s issue living at the time of her death, and in the event his daughter predeceased him, “ in lieu of the trust herein created, I give, devise and bequeath the two-thirds (%) of the residuary estate after the payment of the Three Thousand ($3,000.00) Dollars to my brother * * * as herein provided, to the issue of my daughter * * * equally, share and share alike.” In article Seventh the testator authorizes his executors and trustees to sell any of his property for the purpose of preserving or enhancing their value; and article Eighth directs ‘1 that all income, or annuity payable under any of the Trusts created by this Will shall be computed and accrued from the date of my death and that payment of such income or annuity shall be begun as soon as practicable after my death.”
The issues raised by the widow’s answer are that she is entitled to elect to take her share of the testator’s estate as in intestacy, i.e., “ $2,000 plus one-half of the residue ”, because the will neither creates nor gives her the equivalent of such intestate share nor does it sufficiently provide for her so as to defeat the right of election accorded to a surviving spouse pursuant to section 18 of the Decedent Estate Law; that section 83 of the Decedent Estate Law, as amended, does not reflect the true intention of the Legislature and attacks that section as being violative of her rights under the Federal and State Constitutions, and as denying her equal protection under the law, and that section 83 of Decedent Estate Law is discriminatory and creates a double standard for surviving spouses; that the provisions of the will do not create a separate and independent trust for the benefit of the widow as required under section 18; that the provisions of the will permit invasion of the trust principal in violation of said section 18; that the provisions of the will are “ ambiguous and interwoven, one with the other, and cannot be separated ”, and lastly, that the income in excess of $3,120 per annum, earned by the trust directed to be created for the benefit of the testator’s daughter in article Sixth of the will, must be distributed as in intestacy pursuant to section 83 of the Decedent Estate Law because the will is silent as to the distribution of such excess income.
The executors assert that the provisions of the will relating to the widow satisfy in all respects the requirements of sections 18 and 83 of the Decedent Estate Law and hence her notice of election is of no effect. With respect to the undisposed income, they urge that it must be distributed, pursuant to section 63 of the Real Property Law, to the persons presumptively entitled to the next eventual estate, that is, to the testator’s daughter *446 and to her children. The special guardian for the testator’s grandchildren takes a position similar in all respects with that taken by the exeetuors.
The court is clearly of the opinion that the provisions for the widow in the will fully satisfy the requirements of paragraph (d) of subdivision 1 of section 18 of the Decedent Estate Law which reads as follows: ‘c Where the will contains an absolute legacy or devise, whether general or specific, to the surviving spouse, of or in excess of the sum of twenty-five hundred dollars and also a provision for a trust for his or her benefit for life of a principal equal to or more than the excess between said legacy or devise and his or her intestate share, no right of election whatever shall exist in the surviving spouse.”
Subdivision 1 of section 83 of the Decedent Estate Law, as amended by chapter 689 of the Laws of 1959 and by chapter 712 of the Laws of 1963, provides that in cases where there is only one surviving child or the issue of only one predeceased child and no issue of any other predeceased children, the surviving spouse shall take one half of the net estate instead of one third as previously provided. Thus the language of subdivision 1 of section 18 of the Decedent Estate Law, giving to the surviving spouse a personal right of election ‘ ‘ to take his or her share of the estate as in intestacy ”, might understandably be construed that a surviving spouse could elect to take her intestate share of one half of the estate. However, this apparently clear language of section 18 of the Decedent Estate Law must be read in conjunction with the last proviso of subdivision 1 of section 83 of the Decedent Estate Law, as amended, which reads as follows: “ provided, however, that the provisions of this sentence [giving one half instead of one third] * * * shall not apply in the instance of any exercise of a right of election pursuant to section eighteen of this chapter.” (Matter of Weiss, 33 Misc 2d 641; Matter of Trubenbach, 35 Misc 2d 318.) It has been held that the phrase £ £ intestate share ’ ’, as used in section 18, are words of art and not descriptive of the share taken (Matter of Goldsmith, 177 Misc. 298). In connection with his approval of the amendment, Governor Rockefeller, in his message dated April 22, 1959, stated in part as follows: ££ The primary purpose of this bill is to increase the intestate share of a surviving spouse from one-third to one-half of the estate when the decedent is survived by a spouse and not more than one child or not more than the issue of one child. The desire is to avoid the anomalous situation of an only child receiving two-thirds of the estate of a decedent and the widow, who often must care for the child, receiving one-third. * * * £ The bill would not be applicable *447 to the exercise of a surviving spouse’s right of election under section 18 of the Decedent Estate Law.’ ” (Matter of Weiss, supra, p. 642.)
The Third Report of the Commission on Estates (N. Y. Legis. Doc., 1964, No. 19 [March 31,1964]) at page 193 (781) describes the New York law as follows: “ Then, too, amendments were made in 1959 and in 1963 to section 83 which changed the intestate share of the surviving spouse. The 1959 amendment provided for an equal division between the surviving spouse and a single child but specifically stated, and the courts have held that the elective share is still one-third in such cases. The 1963 amendment did not change this in any respect. Thus the elective share is still one-third, regardless of the number of descendants there are. In all other cases it is limited to one-half of the net estate as defined by the statute.” (Emphasis supplied.) If at a first reading sections 18 and 83 might appear inconsistent, a study of the legislative discussion in connection with its enactments, the Governor’s message with respect thereto, and the authorities interpreting the sections with which we are concerned removes all doubt as to the meaning and purpose of the sections now under discussion.
Nor does the court find any merit to any of the constitutional issues raised by the widow. In Matter of Adams (182 Misc. 937, affd. 267 App. Div. 985, mot. for lv. to app. den. 268 App. Div. 849, cert. den. 324 U. S. 865) Surrogate Foley said (pp. 940-941): “ The observation of Mr. Justice Jackson in Irving Trust Co. v. Day (314 U. S. 556, 562, affg. Matter of McGlone, 284 N. Y. 527), which involved the constitutionality of a situation arising out of section 18 of the Decedent Estate Law, is pertinent : ‘ Rights of succession to the property of a deceased, whether by will or by intestacy, are of statutory creation, and the dead hand rules succession only by sufferance. Nothing in the Federal Constitution forbids the legislature of a state to limit, condition, or even abolish the power of testamentary disposition over property within its jurisdiction. (Mager v. Grima, 8 How. 490; United States v. Fox, 94 U. S. 315; United States v. Perkins, 163 U. S. 625; cf. Randall v. Kreiger, 23 Wall. 137, 148.) Expectations or hopes of succession, whether testate or intestate, to the property of a living person, do not vest until the death of that person. Appellants cannot successfully attack the constitutionality of the new legislation which went into effect before McGlone’s death, and became operative only as a result of his own voluntary act. ’ ’ ’ And in Matter of Killough (148 Misc. 73) Surrogate Wingate, at page 85, held: “It is *448 primary that the right to take property by devise or descent is a creature of positive law and not a natural right. (Sultan of Turkey v. Tiryakian, 162 App. Div. 613, 615; affd., 213 N. Y. 429; Knowlton v. Moore, 178 U. S. 41, 55; State ex rel. McClintock v. Guinotte, 275 Mo. 298, 312-314.) ‘ At common law there was no right of succession in property. When a person died his property reverted to his sovereign. Except for statutory enactments of the various States permitting the disposition of property by will or in case of intestacy that the property of a deceased person shall pass to the persons named in the statute, the property of a person dying would revert to the State in which he resided.’ (Matter of Barbour, 185 App. Div. 445, 457; affd., 226 N. Y. 639.) It follows that the manner and terms of devolution are within the sole and absolute regulation of the sovereignty within whose jurisdiction the real or personal property involved is located. (United States v. Perkins, 163 U. S. 625, 629; Mager v. Grima, 8 How. [U. S.] 490, 493; State ex rel. McClintock v. Guinotte, 275 Mo. 298, 314.) Being purely the creature of the statutes, and solely within the legislative control of such State (United States v. Perkins, 163 U. S. 625, 627), its laws may place such conditions or limitations thereon as its policy may dictate, or may even abolish ■entirely any right of succession whatsoever. (United States v. Perkins, 163 U. S. 625, 629; Mager v. Grima, 8 How. 490, 493; State ex rel. McClintock v. Guinotte, 275 Mo. 298, 311-314.) As is said in the last-cited case (at p. 314): ‘ this right of the State to foreclose absolutely or partially, the right to inherit, by law or will, is * * * the exercise of that other power of the State which is inherent in its sovereignty, which allows the State or Nation, to say what shall be done with the property owned by the citizen, at the time of his death’.” (Cf. Matter of Shupack, 158 Misc. 873; Magoun v. Illinois Trust & Sav. Bank, 170 U. S. 283.)
The court cannot give serious consideration to the widow’s contention that the provisions of the testator’s will are “ ambiguous Interwoven one with the other and cannot be separated ’ ’ and do not create a separate and independent trust for her benefit. A reading of the entire instrument clearly describes two separate valid trusts, one for the benefit of the widow and one for the benefit of the testator’s daughter, and that each trust is independent of the other. The widow’s trust may not be invaded under any circumstances and terminates upon her death with the principal thereof distributable at that time. The trust for the daughter runs for a period of 10 years or her prior decease, and the principal thereof is to be *449 distributed when the first of these events occur. From the plain language used by the testator in his will we can arrive at no conclusion other than that he intended and did create two separate valid trusts (Central Trust Co. v. Egleston, 185 N. Y. 23; Leach v. Godwin, 198 N. Y. 35) and the court so holds.
In her brief, the widow complains that “ there is no tax clause in the will for allocation of taxes * * * and the share for the widow would be subject to its charge of the proportionate share of estate taxes. Such tax charge would substantially reduce the share of the widow * * * and if there is no marital deduction, the estate tax will be very substantial and after such proportionate charge to the share of the surviving spouse, the remainder would not be equal to the intestate share required by section 18.” The fact that the testamentary plan of distribution fails to take advantage of the provisions of the estate tax law with regard to marital deductions, does not in any way enlarge or add to the right of a surviving spouse to elect (Matter of Campbell, 4 Misc 2d 331). In the absence of directions by a testator, section 124 of the Decedent Estate Law determines apportionment of estate taxes. The computation of the share of a surviving spouse is based on the net estate before any computation of estate taxes or apportionment is made (Matter of Ruppert, 1 Misc 2d 1072, affd. 2 A D 2d 958, affd. 3 N Y 2d 731).
Under the circumstances of the case, there is no right of election exercisable by the widow.
In the construction phase of this proceeding, it appears that the income from the trust for testator’s daughter under article Sixth of the will is expected to substantially exceed $3,120 yearly, which is the maximum amount payable to the beneficiary of the trust, and that no provision is made for the accumulation of the surplus income nor for its disposition, hence the executors seek instructions from this court as to the persons entitled to receive such future surplus income. Where income is thus undisposed by will, section 63 of the Real Property Law provides that “ such rents and profits shall belong to the persons presumptively entitled to the next eventual estate.” This statute is equally applicable to future interests in personal property (Matter of Harteau, 204 N. Y. 292).
The widow contends that “ the interest of the daughter and her issue by the will provisions are specifically contingent on survival at different times and it is possible that none of them may survive, and no one receives a present interest either in the undisposed income or principal.” Hence, the widow argues, this requirement of survivorship removes the testator’s daughter *450 and grandchildren from the category of “ persons presumptively entitled to the next eventual estate ” within the meaning of section 63 of the Real Property Law.
In Matter of Nelson (208 Misc. 215, 216-217), which involved excess income under a trust created by and undisposed of under the testator’s will, Surrogate Frankenthaler, in applying section 63 of the Real Property Law, said: 11 Even though some of the presumptive remaindermen may ultimately fail to receive their respective shares of the corpus because of failure to meet the conditions imposed by the testator, payment of the proportionate shares of the income need not await the time when ultimate ownership of the property can be precisely ascertained as such a delay would permit the very accumulation which the law has forbidden and which section 63 was designed to avoid (Matter of Kohler, 96 Misc. 433; Matter of Eickelberg, 135 Misc. 581; Matter of Cortright, 200 Misc. 281).” It seems apparent that the persons entitled to the next eventual estate are those who would take the fund at the end of the trust period, namely, the testator’s daughter to the extent of three fourths thereof, and his grandchildren to the extent of one fourth thereof. Some of these persons are now living and there may be additional grandchildren born before the termination of the trust. The presumption exists that the testator’s daughter and his grandchildren now living will continue to live until the termination of the trust (Matter of Childs, 207 Misc. 1126), and if there are additional grandchildren born they too will be entitled to share in the future income with those grandchildren now in being (Real Property Law, § 63; Matter of Emery, 202 Misc. 90). The underlying theory of the statute, as stated in Manice v. Manice (43 N. Y. 303, 385), is entirely patent, to the effect that “ Those who presumptively will be entitled to receive the rents and profits when the period of accumulation ends, are entitled to anticipate the event which is to terminate the accumulation and to take at once the rents and profits which are undisposed of or unlawfully directed to be accumulated.” In Matter of Shupack (158 Misc. 873, supra) Surrogate Wingate discussed the meaning of the words “presumptively entitled ’ ’, as used in section 63 of the Beal Property Law, at length. The court reasoned that a presumption is merely an inference of fact adduced from customary human experience on proof of circumstances that usually or necessarily attend such fact, and that a condition once shown to exist is presumed to continue (Matter of Callahan, 142 Misc. 28; Matter of Hagan, 157 Misc. 378). The court then concluded that the existence of life on a given date will give rise to an inference *451 of fact that it will continue in the future (Young v. Shulenberg, 165 N. Y. 385). When gifts are made to a readily ascertainable class, the necessity of survivorship does not remove said class members from those presumptively entitled to the next eventual estate. This is so even though some of the presumptive remaindermen may ultimately fail to receive any part of their respective share of the corpus (Matter of Childs, supra; Matter of Nelson, supra).
The widow in support of her contention cites Matter of Tower (72 N. Y. S. 2d 522), wherein the court was unable to ascertain who were the persons presumptively entitled to the next eventual estate with the consequence that section 63 of Real Property Law was held inapplicable and the surplus, for that reason, was distributed as in case of intestacy. In the Tower case, Surrogate Delehanty relied principally upon the holding of the Court of Appeals in United States Trust Co. v. Soher (178 N. Y. 442), but speaking of this latter case, Surrogate Wingate, in Matter of Shupack (supra, pp. 879-880) said:
“ The determination in the Soher case would be a subject of greater concern to one attempting to ascertain the correct legal principles applicable to cases of this type had subsequent pronouncements of the appellate courts of the State exhibited any tendency to follow its holding in this regard. An investigation discloses, however, that in thirty-two years since it was rendered, it has been cited only twice in opinions in the Court of Appeals, once in Matter of Kohler (231 N. Y. 353, 377), where it was held ‘ inapplicable ’, and once in the dissenting opinion in First National Bank & Trust Co. v. Palmer (261 N. Y. 13), in which its doctrine, if representing the law, might conceivably have been conducive to a result differing from that attained by the majority of the court. Its rule has never been followed in any Appellate Division opinion which the research of the court has disclosed, and apparently the only instance of its application in a published opinion in a court of first impression is in Matter of Ready (132 Misc. 616).
‘ ‘ The conclusion appears reasonable, therefore, that its determination is to be deemed overruled sub silentia and that the provisions of section 63 of the Real Property Law furnish the sole applicable criterion of devolution in the situations which it purports to cover.”
The testator’s daughter and grandchildren are the persons presumptively entitled to the next eventual estate and are entitled to receive proportionately the undisposed income derived from the trust under article Sixth of the testator’s will.